UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JESUS MAGO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:20cv1466 (MPS) |
| | : | |
| LIEUTENANT FINNUCAN, ET AL., | : | |
| Defendants. | : | |

## RULING AND ORDER

The plaintiff, Jesus Mago, is currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall-Walker").  He initiated this action by filing a civil rights complaint against Lieutenant Finnucan and Correctional Officers Rodriguez, Duley, and Smith.  The plaintiff alleged that on January 8, 2020, the defendants used excessive force against him and were deliberately indifferent to his health after the use of force.  *See* Compl., ECF No. 1, at 5-6.  On January 19, 2021, the Court dismissed the Fourteenth Amendment deliberate indifference to health claims without prejudice and concluded that the allegations regarding the force used by the defendants stated a plausible claim under the Fourteenth Amendment.  *See* IRO, ECF No. 9, at 8.  Because the complaint did not included a request for relief as required by Rule 8(a)(3), Fed. R. Civ. P., the Court directed the plaintiff to file an amended complaint to reassert his Fourteenth Amendment claims against the defendants and to include a request or requests for relief.  *Id.*

The plaintiff has filed an amended complaint against Lieutenant Finnucan and Correctional Officers Rodriguez, Dudley/Duley,[1] and Smith.  He asserts First and Fourteenth

---

[1]  The plaintiff listed Correctional Officer Duley as a defendant in the caption of the complaint as well as the description of parties and statement of facts. Compl. at 1, 5-6.  The plaintiff lists a Correctional Officer Dudley as a defendant in the caption on page one of the amended complaint but does

Amendment claims arising from an alleged use of excessive force by the defendants that occurred on January 8, 2020.  For the reasons set forth below, the Court will dismiss the amended complaint in part.

## I.      Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet

---

not otherwise mention Correctional Officer Dudley.  Am. Compl., ECF No. 12.  Rather, in the description of parties and in the statement of facts in the amended complaint, the plaintiff refers to a Correctional Officer Duley.  *Id.* at 3, 7.  It seems likely that the plaintiff determined that Correctional Officer Duley, who was named as a defendant in the complaint, is in fact Correctional Officer Dudley.  Because it is not completely clear that the plaintiff intended to name Correctional Officer Dudley as a defendant rather than Correctional Officer Duley, however, the Court will refer to the defendant as Correctional Officer

the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Factual Allegations

On January 8, 2020, at Bridgeport Correctional Center, Lieutenant Finnucan called the plaintiff down to his office and questioned him about statements that he had made about God. *See* Am. Compl. at 7 ¶ 1.  The plaintiff asked Lieutenant Finnucan whether he thought it was unacceptable to speak about God, but was acceptable to gamble, play poker, and look at pornographic magazines.  *Id.*  Lieutenant Finnucan did not respond to the plaintiff's question. *Id.* ¶ 2.  Instead, he ordered Correctional Officers Rodriguez, Dudley/Duley, and Smith to drag the plaintiff out of his office.  *Id.*  Correctional Officer Rodriguez grabbed the plaintiff by his right hand and bent his wrist back.  *Id.* ¶ 3.  The plaintiff yelled that he was not resisting the attempts by Correctional Officers Rodriguez, Dudley/Duley, and Smith to remove him from Lieutenant Finnucan's office and that they were hurting him.  *Id.* ¶ 4.

As multiple other correctional officers arrived at the scene, Officers Rodriguez, Dudley/Duley, and Smith slammed the plaintiff's face against a wall.  *Id.* ¶ 5.  Although the plaintiff offered no resistance, Lieutenant Finnucan sprayed him in the face with a chemical agent.  *Id.* ¶¶ 5-6.  Multiple officers slammed the plaintiff onto the floor and jumped on his back causing him to experience pain in his spinal cord.  *Id.* ¶ 7.  As he lay on the ground, the plaintiff called for help.  *Id.* ¶ 8.  Officers escorted the plaintiff to the restrictive housing unit.  Either before or after placing the plaintiff in a cell in the restrictive housing unit, officers attempted to decontaminate the plaintiff from the effects of the chemical agent that Lieutenant Finnucan had sprayed in his facial area, but the attempts were inadequate.  *Id.* ¶ 9.  After his placement in a cell in the restrictive housing unit, the plaintiff requested medical treatment for severe back pain.

Dudley/Duley.                           3

*Id.* ¶ 10.

### III.   Discussion

The plaintiff asserts a Fourteenth Amendment excessive force claim against all defendants and First Amendment free exercise of religion and retaliation claims against defendant Finnucan.  *Id.* ¶¶ 11-12.  For relief, he seeks a total of $150,000.00 in damages.  Am. Compl. at 6.

State of Connecticut Department of Correction records reflect that the plaintiff was a pretrial detainee on the date of the incident involving the alleged use of force by the defendants. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=223179.[2]  Accordingly, the Fourteenth Amendment is applicable to the use of force claim and to any claim that the defendants were indifferent to an unreasonable risk of harm to the plaintiff's health or medical needs after the use of force.  *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment") (citing *Bell v. Wolfish,* 441 U.S. 520, 535–539 (1979)); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2017) (claims pertaining to the conditions of a pretrial detainee's confinement in a state prison facility, including a condition involving a risk of serious damage to the detainee's health, should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."); *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019)   ("Although *Darnell did* not specifically address medical treatment, the same principle applies here.").

---

[2]  He is currently serving a six-year sentence imposed on March 11, 2021. *Id.*

### A.    Eleventh Amendment

The plaintiff does not indicate whether he sues the defendants in their individual capacities only or whether he sues the defendants in both their individual and official capacities. To the extent that the plaintiff seeks damages from the defendants in their official capacities, those claims for relief are barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claims seeking monetary damages from the defendants in their official capacities for violations of the plaintiff's federal constitutional rights are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B.    Fourteenth Amendment – Excessive Force

In *Kingsley v. Hendrickson,* 596 U.S. 389 (2015), the Supreme Court held that in deciding whether the force used by a prison official against a pretrial detainee was excessive under the Fourteenth Amendment, "courts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind."  *Id.* at 394-95. Accordingly, to state an excessive force claim against a prison official, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396-97.  The determination of reasonableness must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time. . . ."  *Id.* at 397.  Various considerations "may bear on the reasonableness or unreasonableness of the force used[,]" including the "relationship between the need for the use of

5

force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among others.  *Id.*

The plaintiff alleges that the physical forced used by the defendants in bending back his wrist, slamming him into a wall and onto the floor, and deploying a chemical agent into his face was unnecessary and excessive in response to non-threatening verbal statements that he made to Lieutenant Finnucan.  In a letter attached to the amended complaint, the plaintiff alleges that a psychiatrist diagnosed him with post-traumatic stress disorder and he has experienced chronic pain in his back, instability in his right knee, nervousness, stress, and anxiety since the January 8, 2020 incident. Am. Compl. at 9.  Given these allegations as well as the allegation that the plaintiff made no attempt to resist when Officers Rodriguez, Dudley/Duley, and Smith removed him from Lieutenant Finnucan's office, the plaintiff has stated a plausible claim that the force used by Lieutenant Finnucan and the force used by Officers Rodriguez, Dudley/Duley, and Smith was objectively unreasonable.  The Court will permit these Fourteenth Amendment claims of excessive force to proceed against the defendants in their individual capacities.

### C.   Deliberate Indifference to Health or Medical Needs

The plaintiff alleges that the officers who escorted him to the restrictive housing unit failed to properly decontaminate him from the chemical agent deployed by Lieutenant Finnucan and that during his confinement in the restrictive housing unit, he requested medical treatment for back pain caused by the use of force by the defendants.  Although the plaintiff's description of legal claims does not include an allegation that the defendants were deliberately or recklessly

indifferent to a risk of harm to his health or an allegation that the defendants were deliberately or recklessly indifferent to serious medical needs, the Court addresses these Fourteenth Amendment claims to the extent that the plaintiff did not intend to abandon them. *See* Am. Compl. at 10.

There are two prongs to a Fourteenth Amendment deliberate indifference claim involving the conditions of confinement of a pretrial detainee. *Id.* Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). The second prong, also called the "*mens rea*" or state of mind prong, of the "deliberate indifference [standard] is defined objectively." *Id.* at 35. To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Mere negligent conduct by a prison official does not satisfy the second prong of the Fourteenth Amendment standard. *Id.* at 36.

The Second Circuit has applied the Fourteenth Amendment standard in *Darnell* to claims that prison officials or medical providers delayed the provision of medical treatment to a detainee for a serious condition or deprived a detainee of any treatment for a serious condition. *See, e.g., Roice v. Cty. of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying *Darnell* Fourteenth Amendment standard to pretrial detainee's claim that prison medical providers failed to promptly treat his complaints of abdominal pain and nausea); *Charles*

*v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019) ("Although *Darnell* did not specifically address medical treatment, the same principle applies here.") (emphasis added). There are two prongs to a Fourteenth Amendment deliberate indifference to medical needs claim. *See Charles*, 925 F.3d at 86 (2d Cir. 2019) (citations omitted).

Under the first prong, a detainee must allege that his or her medical need or condition is serious. *Charles*, 925 F.3d at 86. A "sufficiently serious" medical need exists if the detainee suffers from an urgent medical condition that can cause "death, degeneration, or extreme [or chronic] pain." *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Factors relevant to the seriousness of a medical condition include "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.* (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)).

Under the second prong, a detainee must allege that the medical provider or prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Deliberate "indifference [may be] manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).

The plaintiff does not allege that he experienced any harmful effects from the improper

decontamination attempts made by unidentified officers.  Moreover, he offers no new facts to suggest that any defendant was involved in escorting him to the restrictive housing unit or in decontaminating him from the chemical agent.  Thus, there are no facts from which it could be inferred that the named defendants were aware of or should have been aware that the attempts to decontaminate the plaintiff from the effects of the chemical agent were deficient.

Although the back pain experienced by the plaintiff may have been severe, the plaintiff has not alleged that he ever made the defendants aware of his back pain, that they should have been aware of his back pain, or that he requested that the defendants facilitate the provision of medical treatment for his injuries.  Thus, as alleged, the facts do not state a plausible claim that any defendant violated the plaintiff's Fourteenth Amendment right not to be subjected to a condition that posed a risk of substantial harm to his health or to be subjected to deliberate or reckless indifference to a serious medical need.  To the extent that the plaintiff intended to assert Fourteenth Amendment claims that the defendants were deliberately or recklessly indifferent to a risk of harm to his health or a serious medical need, those claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.    First Amendment Claims

The plaintiff contends that Lieutenant Finnucan retaliated against him for expressing and defending his religious beliefs by using excessive force against him.  There are arguably two distinct claims here:  a free exercise claim and a free speech retaliation claim. "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 283 U.S. 342, 348 (1987); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been

9

understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."). A prisoner's right to exercise his religion is not absolute, however, and must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks and citation omitted). Therefore, prisoners' free exercise claims are "judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotation marks and citation omitted).

To state a First Amendment free exercise claim, a plaintiff "must make a threshold showing that 'the disputed conduct substantially burden[ed] his sincerely held religious beliefs.'" *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)). Thus, a plaintiff must assert facts demonstrating that he "sincerely holds a particular belief," that "the belief is religious in nature," and that the defendant's conduct "substantially burdened" his exercise of that belief. *Ford*, 352 F.3d at 588-91. In determining whether a plaintiff's religious beliefs were substantially burdened, "[t]he relevant question" is whether the beliefs are "considered central or important to [the plaintiff's] practice of" his or her religion or faith. *Id.* at 593-94. A defendant's conduct that substantially burdens a plaintiff's sincerely held religious beliefs will not constitute a violation the Free Exercise Clause of the First Amendment if the conduct is "reasonably related to legitimate penological interests." *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone,* 482 U.S. at 349).

The Second Circuit has instructed district courts' to "'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against

a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)).  Thus, retaliation claims "stated in wholly conclusory terms" are insufficient.  *Dolan*, 794 F.3d at 295 (internal quotation marks and citations omitted).

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the [inmate's] speech or conduct ... was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted). "[A]dverse action on the part of the defendants" is defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill v. Pidlypchack*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Davis*, 320 F.3d at 353).  As to the third requirement, the plaintiff must show that "the protected conduct was a substantial or motivating factor" for the defendant's action.  *Holland v. Goord,* 758 F.3d 215, 225 (2d Cir. 2014) (citation and internal quotation marks omitted).

The amended complaint includes allegations that the plaintiff made statements about God in the dayroom at Bridgeport Correctional Center on or before January 8, 2020, Lieutenant Finnucan called the plaintiff to his office and questioned the plaintiff about the statements, the plaintiff responded that he believed it was acceptable to speak about his religion or God, and after hearing plaintiff's explanation, Lieutenant Finnucan ordered Correctional Officers Rodriguez, Dudley/Duley, and Smith to drag the plaintiff out of his office and sprayed the plaintiff in the face with a chemical agent.  Although the plaintiff does not identify his religion or

faith, the Court liberally construes the allegations to state a claim that the plaintiff was attempting to exercise his right to speak about his sincerely held religious beliefs and that Lieutenant Finnucan substantially burdened the exercise of those beliefs by using excessive and unnecessary force against him and by directing other officers to use unnecessary force against him. *See, e.g., Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013) ("Therefore, read liberally and as a whole, the complaint alleges that Washington felt a sincere religious obligation to give the Quran to Chaboty, and while the contours of the burden standard are not precisely drawn . . . the conduct alleged here—that Washington was severely punished for engaging in protected activity—rises to the level of a substantial burden on the free exercise of religion.") (citing *Salahuddin v. Goord,* 467 F.3d 263, 275 n.5 (2d Cir. 2006)).  The facts alleged do not suggest that the force used by Lieutenant Finnucan against the plaintiff, who did not engage in threatening behavior or language and did not resist being removed from Lieutenant Finnucan's office, was justified by a legitimate penological goal.  Accordingly, the First Amendment free exercise claim will proceed against Lieutenant Finnucan in his individual capacity.

The plaintiff has met the first prong of the retaliation standard because speaking about or defending his religion or God constitutes speech.  The allegation that Lieutenant Finnucan used unnecessary force in response to the plaintiff's exercise of this First Amendment right constitutes adverse action and meets the causal connection requirement of a retaliation claim.  *See, e.g.*, *Gulley v. Ogando*, No. 3:19-CV-612 (SRU), 2019 WL 2502753, at *7 (D. Conn. June 17, 2019) (plaintiff's allegation that correctional officer's "use of physical force arguably constitutes an adverse action" for purposes of second prong of retaliation claim) (collecting cases).  The plaintiff has stated a plausible retaliation claim against Lieutenant Finnucan and this First

12

Amendment claim will proceed against Lieutenant Finnucan in his individual capacity.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

**(1)** The claims seeking monetary damages from the defendants in their official capacities for violations of the plaintiff's federal constitutional rights are **DISMISSED** under 28 U.S.C. § 1915A(b)(2). The Fourteenth Amendment claims of deliberate or reckless indifference to a risk of harm to the plaintiff's health and deliberate or reckless indifference to the plaintiff's medical needs are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Court concludes that the Fourteenth Amendment excessive force claims will proceed against Lieutenant Finnucan and Correctional Officers Rodriguez, Dudley/Duley, and Smith in their individual capacities, the First Amendment free exercise claim will proceed against Lieutenant Finnucan in his individual capacity, and the First Amendment retaliation claim will proceed against Lieutenant Finnucan in his individual capacity.

**Within fourteen days of the date of this order, the plaintiff shall file a Notice clarifying whether he intended to name Correctional Officer Dudley or Correctional Officer Duley as a defendant in the amended complaint.**

**(2)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Lieutenant Finnucan, Correctional Officer Rodriguez, Correctional Officer Smith, and Correctional Officer Dudley, who may also be known as Duley, and mail a copy of the amended complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request. If any

defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Finnucan, Rodriguez, Dudley/Duley, and Smith shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address.  The plaintiff should also inform the attorney for the defendants of his new address.

(7)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.  The plaintiff is advised that the Program may be used only to file documents

14

with the Court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with

the Court.  Therefore, discovery requests must be served on defendants' counsel by regular mail.

      **(8)**     The Clerk shall send a courtesy copy of the amended complaint and this order to

the Connecticut Attorney General and to the DOC Legal Affairs Unit.

      **(9)**     The parties must comply with the District of Connecticut "Standing Order Re:

Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can

be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

      SO ORDERED at Hartford, Connecticut this 26th day of April, 2021.


          _____/s/_____
          Michael P. Shea
          United States District Judge