UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESUS MAGO,<br><br>        *Plaintiff*,<br><br>        v.<br><br>THOMAS FINNUCAN, et al.,<br><br>        *Defendants*. | No. 3:20cv1466(MPS) |

**MEMORANDUM OF DECISION**

Plaintiff Jesus Mago, an inmate in the custody of the Connecticut Department of Correction, filed this action under 42 U.S.C. § 1983 against Department of Correction employees Thomas Finnucan, Nicholas Rodriguez, Michael Smith, and Mark Duley alleging excessive force and violation of his First Amendment rights arising out of a January 8, 2020 incident at the Bridgeport Correctional Center. The defendants moved for summary judgment on the ground that the plaintiff failed to exhaust administrative remedies before filing suit as required by the Prison Litigation Reform Act. I determined that there were genuine issues of fact as to whether the plaintiff satisfied the exhaustion requirement and denied the defendants' motion. ECF No. 60. On September 7, 2023, I held an evidentiary hearing on the issue, at which I listened carefully to the testimony of all four witnesses who testified and reviewed the two exhibits that were admitted into evidence. After the hearing, I heard oral argument and have considered the arguments made by counsel. For the reasons that follow, I find that the plaintiff did not exhaust available administrative remedies and therefore this action must be dismissed.

**I.      Legal Standard**

The Prison Litigation Reform Act ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies. See 42 U.S.C. § 1997e(a)

(providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "[T]he Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries." *Coley v. Garland*, 2023 WL 346242, at *4 (N.D.N.Y. Jan. 20, 2023) (citing *Messa v. Goord*, 652 F.3d 305, 308-09 (2d Cir. 2011)).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly.[1] *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). Exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 Fed. App'x 27, 29 (2d Cir. 2008).

"An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable." *Johnson v. Barone*, 2023 WL 3949039, at *3 (D. Conn. June 12, 2023) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted). An administrative procedure is

---

[1] The Connecticut Department of Correction has a well-established inmate grievance program, which is set forth in its Administrative Directive 9.6, discussed herein.

"unavailable" when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* 578 U.S. at 643. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

Exhaustion of administrative remedies is an affirmative defense on which the defendants bear the burden of proof.  *See Jones*, 549 U.S. at 216. "Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies." *Jumpp v. Simonow*, 2021 WL 3493535, at *3 (D. Conn. Aug. 9, 2021).

## II.    FINDINGS OF FACT AND ANALYSIS

Four witnesses testified at the September 7 hearing.  I make factual findings concerning the testimony of each below.

*Michaela McCarthy*

McCarthy was the administrative remedies coordinator ("ARC") at the Bridgeport Correctional Center ("BCC") when the incident at issue in this lawsuit – the alleged assault on the plaintiff on January 8, 2020 – occurred.  She testified credibly that she was assigned as the ARC at BCC from November 2019 through August 2020.  Her job involved collecting grievances from grievance boxes located in or near the units, reviewing them, and screening them for procedural defects – such as failures to attach the requisite Inmate Request Form (Form CN 9601), attaching too many pages, attempting to grieve multiple issues on one form, and the

like.  If she noticed such a procedural defect, she would not log the grievance on the grievance log but would instead return it to the inmate "without disposition," with a form that notified the inmate what was wrong with the grievance and a blank grievance form so the inmate could refile.  McCarthy maintained a notebook of grievances that were returned without disposition. She would also keep a copy of all grievances that were returned without disposition in a locked filing cabinet in her office; only she and her "backup" ARC had keys to this cabinet and to her office, which was also locked in her absence. Similarly, only she and the backup ARC had keys to the locked grievance boxes, and the slot for depositing grievances was too narrow to fit a hand through.

If the grievance from the inmate was procedurally correct, McCarthy would log the grievance on the grievance log and provide a receipt to the inmate.  She would maintain copies of the grievance and the grievance log in the locked filing cabinet.  The documents kept in the filing cabinet were grievance-related documents from the "current fiscal year"; the DOC's fiscal year runs from July 1 through June 30.  After the end of the fiscal year, grievance-related documents would be maintained for "at least 7 years" in bankers' boxes in her office.  She logged and kept Level 2 grievances in the same manner.  She identified Exhibit 502 as the grievance log for BCC from the relevant period, which included her handwritten entries.[2]  There is no entry for the plaintiff on the log, and there were no grievance-related documents for Mago during the relevant period.

---

[2] In the plaintiff's opposition to the defendants' motion, the plaintiff asserted that under Fed. R. Civ. P. 37, the Court should preclude the grievance log and witness testimony concerning the log because the defendants failed to disclose them in their Rule 26 initial disclosures.  ECF No. 58-2 at 10-11.  I ordered the defendants to file any response to the plaintiff's request to preclude by August 11, 2023 and stated that I would take up the issue during the evidentiary hearing. ECF No. 60 at 7.  After the defendants filed their response, ECF No. 65, the plaintiff did not press the issue, and the grievance log and the testimony of the administrative remedies coordinator who maintained the log were admitted without objection at the evidentiary hearing.  Further, as the defendants' response notes, ECF No. 65 at 2, cases brought "without an attorney by a person in the custody of … a state" are exempt from the initial disclosure requirement.  Fed. R. Civ. P. 26(a)(1)(B)(iv).

McCarthy also testified that she maintained a computerized spreadsheet on her computer while she held the ARC position at BCC, and that this spreadsheet contained the same information as the grievance log.

On cross-examination, she admitted that the grievance log was not perfectly sequential, i.e., some entries were not in date order, suggesting that some grievances were not logged immediately upon receipt, as she said was her practice. She testified, however, that these out-of-order entries may have reflected occasions when the backup ARC had received the grievance and had not logged it immediately.

*Captain Donald Acus*

Captain Acus, who is currently the ARC for Level 2 administrative remedies and disciplinary appeals and works in the District Administrator's office, was also a credible witness. His job involves receiving Level 2 appeals, formulating responses, and presenting these materials to the District Administrator for final decision. His testimony walked through the procedures required by the version of Administrative Directive 9.6 that was in effect at the relevant time, i.e., the early part of 2020. Administrative Directive 9.6 provides the specific requirements an inmate must follow prior to filing a lawsuit.[3] Briefly, he described that, under the Directive, an inmate had first to seek verbally to resolve the issue with DOC staff, then, failing that, to file an inmate request form on Form CN 9601. If that did not resolve the issue, the inmate could file a Level 1 grievance on Form CN 9602, a step that had to be taken within 30 days of the incident that was the subject of the grievance. An inmate was required to include with the grievance the Form CN 9601, the inmate request form. If the inmate received a response to the grievance that

---

[3] Defendants also submitted as an exhibit the version of Administrative Directive 9.6 in effect at the times relevant to this action. See Exhibit 501.

did not resolve the issue, then at the third step, the inmate had five days from receipt of the response to appeal a Level 1 disposition to Level 2.  If the inmate did not receive a response to the Level 1 grievance, he had 65 days from submitting the Level 1 grievance to file a Level 2 grievance on that issue.  Filing a Level 2 grievance is a necessary step in the full exhaustion of administrative remedies.

Acus testified that he had checked the Level 2 grievance records and found no evidence that the plaintiff had filed a Level 2 grievance during the relevant period.  He said the DOC keeps Level 2 grievance records for 5 years or until the end of litigation, whichever is later.

Finally, an inmate could file a Level 3 appeal to challenge department policy, to challenge the integrity of the grievance process, or if the inmate had received no response to a Level 2 grievance; he checked and found no evidence that the plaintiff had filed a Level 3 grievance.

Acus also testified that all inmates are made aware of grievance procedures through an inmate handbook, orientation, and other means.

*Leatha Walton Benjamin*

Benjamin, the current ARC at BCC, was also a credible witness.  She testified that she twice examined the grievance log, the return without disposition log, and the computerized spreadsheet for grievances at BCC and found no evidence that the plaintiff had filed a grievance during the relevant period.  She could also find no evidence that he had attempted to file a grievance that had been returned without disposition.  She testified that she had examined all the BCC's relevant grievance records and could find no evidence that the plaintiff had filed, or even attempted to file, a grievance during the relevant period.

*The Plaintiff*

The plaintiff testified that after the incident that is the subject of this lawsuit occurred, he was taken to "seg," i.e., a restricted housing unit.  He testified that he immediately started complaining about knee and back pain, saying he wanted "to go to medical," that no one responded, and that he spent seven days in "seg."  The plaintiff was then returned to his original cell block, where he submitted requests to medical.  I found this part of his testimony to be credible and conclude that it is likely he filed, or at least sought to file, a health services request under Administrative Directive 8.9, which governs the administrative remedies for health services, because he testified that he was injured as a result of the incident and it would have been natural for an inmate to ask for medical assistance in those circumstances.

The plaintiff subsequently testified that he was moved within BCC several times thereafter and at one point he asked correctional officers for a "grievance."  He then said that he "put the grievance in the box," presumably referring to the grievance box.  A bit later, he added that he had asked for "a grievance package" so "I could file against medical and the officers."  It was not until even later in his testimony that he first mentioned, upon a somewhat more pointed question from his lawyer, that the subject of his "grievance" included the "assault" that is the subject of this lawsuit.  He added that he wrote out another "request" and then waited a few weeks.  He testified that he tried to file a Level 2 grievance but received no response.  He was eventually moved out of the facility and testified that due to the various moves within BCC and eventually out of BCC, he did not have copies of any grievance-related papers, which he attributed to failings by DOC staff.  I did not find his testimony about filing a "grievance" (as opposed to a health services request) to be credible.  First, the critical steps — preparing an inmate request form, preparing a grievance form and placing it in the grievance box, and then

waiting for a response and filing a Level 2 appeal - were covered very briefly in his testimony. There was scant detail as to time, place, or content of the supposed grievance, and it appeared that the assault - the subject of this action - was mentioned as part of that content as an afterthought and then only because his counsel continued to press him. The plaintiff's primary focus following the assault was, understandably, seeking medical care and the first few minutes of his testimony were devoted to that topic. He did not describe how he (or, as suggested in the deposition excerpts attached to his summary judgment brief, another inmate) had filled out the grievance form, what the grievance form looked like, or from whom he obtained it. He did not describe the grievance box except to say it was near the unit. He did not describe at all any attempts to resolve the issue of the assault — as opposed to his need for medical attention for his injuries — verbally with DOC staff.

Further, the plaintiff acknowledged on cross-examination that he knew about grievance forms and knew how to get them. He also acknowledged that he had testified in his deposition that he had attached only a CHRO complaint form — not the requisite inmate request form — to his grievance, which would have been sufficient grounds to return the grievance without disposition.

* * *

This is a credibility contest, and studies have shown that no human being, be it a judge or juror, is especially adept at resolving such contests by determining, for example, that a particular witness is lying. Nonetheless, as the factfinder here, I must do my best, and in doing so, I find that the plaintiff did not file a grievance with regard to the assault that is the subject of this lawsuit. He may believe that he did - and so I do not find that he is lying - but I conclude that it is more likely than not that anything he filed with regard to the assault incident was a health

services request and not a grievance.   (Under Administrative Directive 8.9, health services requests are not placed in the grievance box but instead are placed in the box marked for Health Services Administrative Remedies.)   In addition to the reasons already provided, I reach this conclusion for the following reasons: (1) the DOC witnesses' testimony established, by at least a preponderance of the evidence, that if a grievance was filed at BCC during the relevant time, it would have been found in the grievance box by McCarthy, collected, and either logged as a grievance, or a copy kept and returned without disposition; the box was locked and essentially tamper-proof, and plaintiff's counsel's attempt to suggest that the grievance was lost or tampered with by McCarthy or the defendants in this case is speculation; (2) it is clear that the DOC has no record of a grievance filed by the plaintiff during the relevant time; and (3) the plaintiff's testimony that he did file a grievance was devoid of detail, somewhat unclear, and ultimately unconvincing.

I further find that administrative remedies were available to the plaintiff during the relevant time.   Although plaintiff's counsel attempted to suggest that DOC staff might have tampered with or discarded any submission by the plaintiff, there was no evidence before me to support such a claim.   To the contrary, McCarthy credibly testified that she did not know who the plaintiff was, that she did not throw away any grievance from the plaintiff, and that she had no reason to believe that her backup did so.   Acus testified similarly.

As set forth above, I find that the plaintiff did not file a grievance concerning the claims asserted in this lawsuit and that he has not established that administrative remedy procedures were not available to him under *Ross*.   Because the plaintiff has failed to exhaust his available administrative remedies concerning the claims in this action, this action is dismissed.

**III.     CONCLUSION**

For the foregoing reasons, the case is DISMISSED for failure to exhaust available administrative remedies before filing suit.  The Clerk is directed to close this case.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 19, 2023